# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

GREGORY CROWE, individually, and as a
representative of a Class of Participants and
Beneficiaries of the CommonSpirit Health
401(k) Retirement Savings Plan,

     Plaintiff,

          v.

COMMONSPIRIT HEALTH, and
COMMONSPIRIT HEALTH RETIREMENT
PLANS SUB-COMMITTEE,

     Defendants.

Civil Action No. 1:25-cv-08239

Judge Andrea R. Wood

---

## PLAINTIFF'S RESPONSE TO
## DEFENDANTS' MOTION TO DISMISS

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................... 1

FACTUAL BACKGROUND ........................................................................... 2

STANDARD .................................................................................................. 4

ARGUMENT ................................................................................................. 4

   I.    DEFENDANTS VIOLATED THE PLAIN LANGUAGE OF THE PLAN ........... 4

   II.   DEFENDANTS BREACHED THE DUTIES OF LOYATY AND PRUDENCE .. 8

      A.   Duty of Loyalty .................................................................................. 8

      B.   Duty of Prudence ............................................................................. 11

   III.  PLAINTIFF HAS PLEADED VIABLE PROHIBITED TRANSACTION CLAIMS. ......................................................................................... 12

      A.   29 U.S.C. § 1106(a)(1)(A) & (D) .................................................... 12

      B.   29 U.S.C. § 1106(b)(1) ................................................................... 14

   IV.  DEFENDANTS PLAUSIBLY VIOLATED ERISA'S ANTI-INUREMENT PROVISION. ..................................................................................... 14

   V.   PLAINTIFF PLAUSIBLY ALLEGES A FAILURE TO MONITOR CLAIM AGAINST DEFENDANT COMMONSPIRIT. .................................................. 15

CONCLUSION .............................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. GreatBanc Tr. Co.*,
 835 F.3d 670 (7th Cir. 2016) ...................................................................11

*Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan by & through Lyon v. Buth*,
 99 F.4th 928 (7th Cir. 2024) .....................................................................8

*Armenta v. WillScot Mobile Mini Holdings Corp.*,
 2025 WL 2645518 (D. Ariz. Sept. 15, 2025)............................................7

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)....................................................................................4

*Becerra v. Bank of Am. Corp.*,
 No. 3:24-cv-921 (W.D.N.C. Aug. 12, 2025) ...........................................13

*Buescher v. N. Am. Lighting, Inc.*,
 2025 WL 1927503 (C.D. Ill. June 30, 2025) .........................................8, 9

*Burke v. Boeing Co.*,
 42 F.4th 716 (7th Cir. 2022) ....................................................................11

*Calderon v. Witvoet*,
 999 F.2d 1101 (7th Cir.1993) .....................................................................5

*Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.*,
 529 U.S. 193 (2000)....................................................................................5

*Cunningham v. Cornell Univ.*,
 604 U.S. 693 (2025)..................................................................................12

*Dale v. NFP Corp.*,
 658 F. Supp. 3d 620 (N.D. Ill. 2023) .......................................................15

*DiFelice v. Fiduciary Couns., Inc.*,
 398 F. Supp. 2d 453 (E.D. Va. 2005) .......................................................11

*Foltz v. U.S. New & World Report, Inc.*,
 865 F.2d 364 (D.C. Cir. 1989)....................................................................9

*Hughes Aircraft Co. v. Jacobson*,
 525 U.S. 432 (1999)..................................................................................15

ii

*Hutchins v. HP Inc.*,
737 F. Supp. 3d 851 (N.D. Cal. 2024) ...........................................................9, 10, 14

*Int'l Bhd. of Painters & Allied Trades Union and Indus. Pension Fund v. Duval*,
925 F. Supp. 815 (D.D.C. 1996) ...................................................................14

*Leigh v. Engle*,
727 F.2d 113 (7th Cir. 1984) ...................................................................13, 15

*Lockheed Corp. v. Spink*,
517 U.S. 882 (1996)...................................................................13

*McManus v. Clorox Co.*,
2025 WL 732087 (N.D. Cal. Mar. 3, 2025)...................................................................8

*McWashington v. Nordstrom, Inc.*,
2025 WL 1736765 (W.D. Wash. June 23, 2025)...................................................................6

*Middleton v. Amentum Parent Holdings, LLC*,
2025 WL 2229959 (D. Kan. Aug. 5, 2025) ...................................................................9

*of Chemonics Int'l, Inc. Emp. Stock Ownership Plan v. GreatBanc Tr. Co.*,
2019 WL 1468157 (N.D. Ill. Apr. 3, 2019) ...................................................................14

*Pegram v. Herdich*,
530 U.S. 211 (2000)...................................................................2

*Perez-Cruet v. Qualcomm Inc.*,
2024 WL 2702207 (S.D. Cal. May 24, 2024)...................................................................8, 13, 14

*Rodriguez v. Intuit Inc.*,
744 F. Supp. 3d 935 (N.D. Cal. 2024) ...................................................................8, 13, 15

*Roth v. Sawyer-Cleator Lumber Co.*,
16 F.3d 915 (8th Cir. 1994) ...................................................................11, 12

*Spence v. Am. Airlines, Inc.*,
775 F. Supp. 3d 963 (N.D. Tex. 2025) ...................................................................11

*Tatum v. RJR Pension Inv. Comm.*,
761 F.3d 346 (4th Cir. 2014) ...................................................................12

*United Food & Com. Workers Int'l Union-Indus. Pension Fund v. Bank of N.Y. Mellon*,
2014 WL 4627904 (N.D. Ill. Sept. 16, 2014) ...................................................................14

*Young v. Verizon's Bell Atl. Cash Balance Plan*,
575 F. Supp. 2d 892 (N.D. Ill. 2008) ...................................................................7

*Young v. Verizon's Bell Atl. Cash Balance Plan*,
    615 F.3d 808 (7th Cir. 2010) ............................................................5, 6

## Statutes

20 U.S.C. § 1002(2)(A) .............................................................................2

20 U.S.C. § 1002(34) ...............................................................................2

29 U.S.C. § 1103(a) .................................................................................1

29 U.S.C. § 1103(c)(1) ...........................................................................14

29 U.S.C. § 1104(a) .................................................................................8

29 U.S.C. § 1106(a)(1)..............................................................5, 7, 11, 12

29 U.S.C. § 1106(b)(1) ...........................................................................14

29 U.S.C. § 1132(a) .................................................................................2

## Other Authorities

Fed. R. Civ. P. 12 ...................................................................................4

# **INTRODUCTION**

The terms of the CommonSpirit Health 401(k) Retirement Plan require Defendants to first use certain Plan assets—forfeiture assets—to pay the administrative expenses of the Plan. Defendants, however, exclusively used these assets for the benefit of the Plan sponsor, Defendant CommonSpirit Health. In doing so, Defendants violated the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1193c.

Participants in the CommonSpirit Health 401(k) Retirement Plan (the "Plan") who terminate their employment with Defendant CommonSpirit Health ("CommonSpirit" or the "Company") before becoming fully vested in the Company's retirement contributions forfeit those unvested assets to the Plan (called "forfeitures"). The terms of the Plan require Defendants, as Plan fiduciaries, to first apply forfeitures to pay the administrative expenses of the Plan, which are otherwise paid by the Plan's participants. The remaining forfeitures, if any, are used to reduce CommonSpirit's matching contributions to the Plan. Since 2019, participants have forfeited over $60 million to the Plan. In violation of the Plan's express language and their fiduciary duties under ERISA, Defendants have used every single dollar to defray CommonSpirit's obligated contributions rather than pay *any* Plan expenses.

Before delving into the claims, Plaintiff must briefly take issue with Defendants' framing of this case. Defendants state that Plaintiff's objective is for the Court to "find that the forfeitures— which he unquestionably did not earn—belong to him." ECF No. 26 ("Mem.") at 1. Not so. The forfeitures constitute money paid into a trust by CommonSpirit.[1] The money was not a gift. It was part of the *quid pro quo* through which CommonSpirit received the time and labor of its employees. These assets do not belong to Plaintiff. The assets belong to the Plan; and, under the plain language

---

[1] *See* 29 U.S.C. § 1103(a) ("[A]ll assets of an employee benefit plan shall be held in trust . . . .").

1

of ERISA, rooted in the common law of trusts,[2] they must be used in the interests of the Plan's beneficiaries. Through his labor, Plaintiff, like the other proposed class members, became a beneficiary of the Plan and, as such, he is entitled to assert the Plan's rights.[3] For Defendants to diminish Plaintiff's claims as a beneficiary because he did not "earn" the forfeitures is antithetical to the very nature of a trust.

## FACTUAL BACKGROUND

The Plan[4] is a section 401(k) defined contribution, individual account, employee pension benefit plan under 20 U.S.C. §§ 1002(2)(A) and 1002(34). ECF No. 1 ("Compl.") ¶ 12. Defendant CommonSpirit Health Retirement Plans Sub-Committee serves as the Administrator of the Plan. Compl. ¶ 22; ECF No. 26-2 ("Plan Doc.") at 16 (§ 1.6).

Each participant's account is funded by a combination of wage withholdings and Company matching contributions. Compl. ¶ 26; Plan Doc. at 16 (§ IV). The Plan requires the Company to make a matching contribution to each participant. Compl. 1 ¶ 27; Plan Doc. at 16 (§4.1(b)). All contributions, including matching contributions, are deposited into the Plan's trust and thereby become assets of the Plan. Compl. 1 ¶ 26; Plan Doc. at 50 (§ 10.6). Participants are immediately vested in their wage withholdings and any income or losses thereon. Compl. ¶ 28; Plan Doc. at 18 (§ 4.2(c)). Generally, however, participants only vest in the Company's matching contribution upon completion of three years of service. Compl. ¶ 29; Plan Doc. 26-2 at 34 (§ 6.4). Should a participant terminate their employment with CommonSpirit before fully vesting in the matching

---

[2] *Pegram v. Herdich*, 530 U.S. 211, 224 (2000).

[3] 29 U.S.C. § 1132(a).

[4] Defendants filed a true and correct copy of the operative Plan Documents concurrently with their Motion to dismiss. ECF No. 26-2, 26-3, 26-4. Plaintiff agrees that the Court may properly consider these Plan Documents in resolving Defendants' pending motion. Consistent with Defendant's briefing, Plaintiff cites the 2014 version of the Plan Documents (ECF. No. 26-2), as there are no relevant differences between the versions.

contribution, the unvested portion is forfeited to the Plan and becomes Plan assets. Compl. ¶ 30; Plan Doc. at 5 (§ 1.6).

The Plan dictates how Defendants must reallocate the Plan's forfeitures. They must first be used "to satisfy any contribution that may be required pursuant to Section 3.7 or 6.10, or be used to pay any administrative expenses of the Plan." Plan Doc. at 21 (§ 4.4(c)).[5] "The remaining Forfeitures, if any, shall" then be "used to reduce the Employer's contributions for the Plan Year." *Id*.

Using forfeitures "to reduce" CommonSpirit's matching contribution obligations is always in the Company's interest because that option allows the Company to contribute less new money to the Plan. Compl. ¶ 65. Allocating forfeitures to pay the Plan's administrative expenses is in the interest of Plan participants because, otherwise, participants pay those costs from their individual accounts. *Id*.; Plan Doc. at 14 (§ 2.7).

Despite the Plan dictating that forfeitures be used to pay the Plan's administrative expenses before they are used to reduce CommonSpirit's contributions, Defendants have invariably used all of these funds to reduce CommonSpirit's contributions. By allocating forfeitures for CommonSpirit's exclusive benefit, the Company harmed the Plan and its participants. Participants' accounts were charged with administrative expenses that should have been paid using the Plan's forfeitures, and participants lost the opportunity to earn gains on these amounts. *Id*. ¶¶ 40, 43:

| Year | CommonSpirit's Contribution Obligations Defrayed by Forfeitures | Expenses Charged Directly to Participants | Expenses Defrayed by Forfeitures |
|------|---------------------------------------|--------------------------|---------------------------|
| 2019 | $11,180,483 | $3,469,069 | $0.00 |

---

[5] Sections 3.7 allows the Company to make corrective contributions to "any Employee who should be included as a Participant in the Plan [and] is erroneously omitted." ECF No. 26-2 at 16. Section 6.10 allows the Company to restore the benefits of any participant or their beneficiary who is subsequently located after their benefit distribution was forfeited "by reason of [inability]. . . to ascertain the whereabouts of such Participant or Beneficiary." *Id*. at 38–39.

| 2020 | $9,977,778 | $3,782,732 | $0.00 |
| 2021 | $10,133,795 | $3,999,343 | $0.00 |
| 2022 | $15,371,840 | $4,140,565 | $0.00 |
| 2023 | $14,993,539 | $4,077,426 | $0.00 |
| Total | **$61,657,435** | **$19,469,135** | $0.00 |

## STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

## ARGUMENT

### I. DEFENDANTS VIOLATED THE PLAIN LANGUAGE OF THE PLAN.

The Plan explicitly dictates that forfeitures must be used to pay the administrative expenses of the Plan *before* they are used to reduce CommonSpirit's matching contributions. This fact sets this case apart from the many recent forfeiture cases, some decided in favor of defendants and some in favor of plaintiffs, where courts addressed Plan language that provided fiduciaries with the discretion to use forfeiture funds for either of these purposes. Defendants accuse Plaintiff of misrepresenting the Plan language (Mem. at 1, 5–6), but the Plan speaks for itself.

Section 4.4(c) of the Plan Document states in relevant part:

Usage of Forfeitures. On or before each Anniversary Date, and to the extent permissible by the Code, any Forfeitures may be used to satisfy any contribution that may be required pursuant to Section 3.7 or 6.10, or be used to pay any administrative expenses of the Plan. *The remaining Forfeitures, if any,* shall be allocated in the following manner:

1. Forfeitures attributable to Matching Contributions . . . shall be used to reduce the Employer's contributions for the Plan Year.

2. Forfeitures attributable to Nonelective Contributions . . . shall be used to reduce the Employer's contributions for the Plan Year.

3. *Any Forfeitures remaining after Forfeitures have been used to pay administrative expenses* and to reduce the Employer's contributions for the Plan Year shall be allocated to the Nonelective Contribution Account of those Participants who are

eligible to receive Nonelective Contributions pursuant to Section 4.1(d) for the Plan Year in the same proportion that such Participant's Compensation bears to the total Compensation of all Participants.

Plan Doc. at 21 (§ 4.4(c)) (emphasis added).

Section 4.4(c) thus unambiguously requires forfeitures to be used to pay Plan expenses, or satisfy Sections 3.7 and 6.10 contributions, before they can be used to reduce Employer matching contributions. Only "remaining Forfeitures, if any" can be used to reduce Employer contributions.

ERISA mandates that fiduciaries must discharge their fiduciary duties "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). Defendants breached this duty when they exclusively used forfeitures to reduce CommonSpirit's contributions in contravention of the Plan's express directive that forfeitures first be used to pay the Plan's expenses. This failure left Plan participants with less savings for disbursement or investment.

Defendants argue that the Plan's use of the word "may," "allow[s] but [does] not require using forfeitures to pay the Plan's administrative expenses." Mem. at 6. Defendants' interpretation is plainly illogical in the context of the entirety of the Plan. *See Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.*, 529 U.S. 193, 198–99 (2000) (While "[t]he word 'may' . . . usually implies some degree of discretion, . . . this principle . . . can be defeated . . . by obvious inferences from the structure and purpose of [that which the court is interpreting]." (cleaned up)); *Calderon v. Witvoet*, 999 F.2d 1101, 1104 (7th Cir.1993) ("English offers so many possibilities that ... [a]ll depends on context."). It is plain from the structure and purpose of the Plan that forfeitures must first be used to pay administrative expenses (or satisfy contribution requirements under Sections 3.7 and 6.10) before they can be utilized to reduce Employer contributions.[6]

---

[6] "The interpretation of ERISA plans is governed by federal common law, which draws on general principles of contract interpretation to the extent they are consistent with ERISA." *Young v. Verizon's Bell Atl. Cash Balance Plan*, 615 F.3d 808, 823 (7th Cir. 2010). "Contracts must be read as a whole, and the meaning of

*First,* the term "the remaining forfeitures, if any" presumes that forfeitures have already been applied for their required purposes and refers only to whatever amounts remain unexpended. *See, e.g.*, *McWashington v. Nordstrom, Inc.*, 2025 WL 1736765, at *13 (W.D. Wash. June 23, 2025) (finding that the plan document's use of "to the extent not used" "dictat[ed] that [forfeitures] be applied ***first*** to restore vested benefits" (emphasis added)). If Defendants could disregard the uses in Section 4.4(c)'s opening clause, the Plan would not have used the word "remaining."

*Second*, Section 4.4(c)(3) confirms that fiduciaries are not free to disregard Section 4.4(c)'s opening clause. Generally, that section provides that "[a]ny forfeitures remaining ***after Forfeitures have been used to pay administrative expenses*** and to reduce the Employer's contributions for the Plan Year shall be allocated to . . . Participants." (emphasis added). This clause presumes that by the time the fiduciaries have reached Section 4.4(c)(3) in the order of operations, forfeitures have been used to pay any administrative expenses. Put another way, using forfeitures to pay any administrative expenses is a condition precedent to a fiduciary satisfying the requirement of Section 4.4(c)(3). Under Defendants' interpretation, where fiduciaries are free to use no forfeitures to pay administrative expenses and to proceed directly to the use of forfeitures to reduce matching contributions under 4.4(c)(1) and (c)(2), Section 4.4(c)(3)'s condition precedent would not be satisfied, and a fiduciary would be obstructed from allocating forfeitures as directed by 4.4(c)(3).

*Third*, Section 6.10 provides that benefits thereunder "shall be restored, first from Forfeitures, if any." Plan Doc. at 38–39 (§ 6.10). That is, despite the use of the word "may" in Section 4.4(c), forfeitures ***must*** first be used to satisfy any Section 6.10 contributions. Under Defendants' interpretation, this leads to an internal inconsistency: Section 4.4(c)'s single use of the word "may" would carry two meanings—mandatory as to Section 6.10 contributions, but

---

separate provisions should be considered in light of one another and the context of the entire agreement." *Id.*

discretionary as to Section 3.7 contributions and Plan expenses. The only coherent reading is that Section 6.10 confirms that Section 4.4(c)'s opening clause requires that forfeitures "be used to satisfy any contribution that may be required pursuant to Section 3.7 or 6.10, or be used to pay any administrative expenses of the Plan" before they can be used to reduce employer contributions.

*Armenta v. WillScot Mobile Mini Holdings Corp.*, 2025 WL 2645518 (D. Ariz. Sept. 15, 2025), cited by Defendants, is distinguishable. There, the plan provided that forfeitures may be used to pay administrative expenses, or otherwise shall be used to reduce employer contributions. *Id.* at *3. The court declined to read-in the word "remaining," from the summary plan document, such that only "remaining" forfeitures could be used to reduce employer contributions. *Id.* at *4. Here, however, the Plan expressly says that only "remaining" forfeitures can be used to reduce employer contributions. And, as explained above, the only logical interpretation of the overall Plan language requires forfeitures to be used to pay administrative expenses before Defendants can use them to reduce employer contributions.

Finally, if the Court finds that the Plan's language is ambiguous and considers extrinsic evidence, this clearly supports Plaintiff.[7] CommonSpirit's own audited Forms 5500, filed with the Department of Labor, confirm that "[forfeitures] ***will be used first to pay administrative Expenses*** and then to reduce employer contributions." Ex. A at 96; Ex. B at 99; Ex. C at 122; Ex. D at 127; Ex. E at 139 (emphasis added).[8] In sum, Plaintiff has plausibly alleged that Defendants failed to act "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D).

---

[7] *Young v. Verizon's Bell Atl. Cash Balance Plan*, 575 F. Supp. 2d 892, 908 (N.D. Ill. 2008) ("Once an intrinsic or extrinsic ambiguity in the terms of a plan is identified, relevant objective extrinsic evidence is admissible to resolve the ambiguity.").

[8] The Court may take judicial notice of the Forms 5500, as "they are public documents, and the contents are not disputed." *Armenta,* 2025 WL 2645518, at *1 n.3.

## II.    DEFENDANTS BREACHED THE DUTIES OF LOYALTY AND PRUDENCE.

### A.    Duty of Loyalty

Under ERISA, fiduciaries owe a strict duty of loyalty. 29 U.S.C. § 1104(a). Pursuant to this duty, fiduciaries must act "solely in the interest of the participants . . . and for the exclusive purpose[s] of providing benefits to participants and their beneficiaries[,] and defraying reasonable expenses of administering the plan." *Id*. The duties charged to an ERISA fiduciary "are the highest known to the law." *Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan by & through Lyon v. Buth*, 99 F.4th 928, 943 (7th Cir. 2024). As discussed above, the Plan *required* Defendants to use the Plan's forfeiture assets to defray plan expenses before using these assets to benefit CommonSpirit by offsetting future matching contributions. Defendants breached the duty of loyalty by disregarding the Plan's clear directive for the benefit of CommonSpirit.

Defendants argue that the Plan did not ***require*** them to use forfeitures before using these assets to offset matching contributions. They argue that the Plan provided them with ***discretion*** to use these assets to either defray plan expenses (for the benefit of the participants) or offset matching contributions (for the benefit of CommonSpirit). Even if the Court agrees that the Plan afforded Defendants such discretion, they plainly violated their duty of loyalty by choosing to use Plan assets for the benefit of CommonSpirit rather than "solely in the interest of the participants" by "defraying reasonable expenses." *See Buescher v. N. Am. Lighting, Inc.,* 2025 WL 1927503, at *13 (C.D. Ill. June 30, 2025) ("[T]here is no argument that the Administrative Committee was acting in the interests of participants and beneficiaries, or that its decisions comported with the text of § 1104(a)(1)(A)").[9]

---

[9] *See also McManus v. Clorox Co.*, 2025 WL 732087, at *2–6 (N.D. Cal. Mar. 3, 2025) (upholding similar breach of loyalty and prudence claims); *Rodriguez v. Intuit Inc.*, 744 F. Supp. 3d 935, 943–46 (N.D. Cal. 2024) (same); *Perez-Cruet v. Qualcomm Inc.*, 2024 WL 2702207, at *2–3 (S.D. Cal. May 24, 2024) (same).

Defendants argue that adopting Plaintiff's theory would effectively create the benefit of paying Plaintiff's administrative costs. Mem. at 10. But Plaintiff does not seek a categorical rule that employers must pay plan expenses. Far more narrowly, Plaintiff's claim rests on the fact that the Plan requires or, at least, expressly permits fiduciaries to use forfeitures to defray plan expenses. Given this discretion, it is certainly plausible that Defendants breached the duty of loyalty when they chose to use forfeitures to benefit CommonSpirit over the Plan's participants.

Further, Defendants' cited cases rely on the statement that ERISA does not require a fiduciary to maximize pecuniary benefits.[10] This statement traces back to *Foltz v. U.S. New & World Report, Inc.*, 865 F.2d 364 (D.C. Cir. 1989), in which the court held that the defendant fiduciaries did not violate ERISA by failing to maximize pecuniary benefits, *when this would be inconsistent with the "explicit directives" and purposes of the plan*. *Id*. 367–68, 372–74. This language should not be misconstrued to support dismissal when it is entirely consistent with the directives and aims of the Plan for Defendants to use forfeitures to pay expenses otherwise borne by the participants.

Defendants also argue that there is an established understanding that plans are permitted to allocate forfeited employer contributions to pay benefits for remaining participants rather than to defray administrative expenses. Mem. at 11. However, "Defendants' contention that allocating forfeitures in this manner is permissible, in a general sense, does not demonstrate that that decision comported with the duty of loyalty in this particular case." *Buescher*, 2025 WL 1927503, at *11. Here, CommonSpirit's decision was not a neutral allocation among permissible options—it was

---

[10] *See Middleton v. Amentum Parent Holdings, LLC*, 2025 WL 2229959, at*14 (D. Kan. Aug. 5, 2025); *Hutchins v. HP Inc.*, 737 F. Supp. 3d 851, 863 (N.D. Cal. 2024).

an exercise of discretion that directly benefited the employer at the expense of participants, in violation of both the Plan's terms and ERISA's core fiduciary duties.

Further, the Secretary of Labor's reasoning, in the Amicus Brief submitted in *Hutchins*, relies on a fantastical hypothetical that should be clearly insufficient to sustain a motion to dismiss. The Secretary of Labor hypothesized that if the HP Plan fiduciaries in *Hutchins* used forfeiture funds to defray plan expenses, then the HP Plan sponsor might refuse to make its obligated matching contributions, leading to a dispute that could put plan participants' timely matching contributions at risk. DOL *Hutchins* Amicus Brief*, 2025 WL 2673895, at \*18–20. There is no reason to believe that this hypothetical possibility was a factor in fiduciary decision making *in this case*, such that it renders Plaintiff's allegations *implausible*.

Finally, it is not true that Plaintiff's theory of liability is "contrary to the settled understanding of Congress and the Treasury Department regarding defined contribution plans." (Mem. at 11 (quoting *Hutchins*, 737 F. Supp. 3d at 863-64)).

(1) Neither the Congressional conference report nor the 2023 proposed Treasury Department regulation referenced in *Hutchins* supersede ERISA.

(2) The Congressional conference report and the proposed regulation both state that a pension plan should be structured in a way that allows for forfeiture funds to be used to either defray administrative expenses or reduce employer contributions.

(3) Neither the conference report nor the proposed regulation purport to address how a pension plan fiduciary should decide between using administrative expenses or reducing employer contributions.

(4) The Treasury Department explained that the logic behind using forfeiture funds to reduce employer contributions is to ensure that a plan sponsor's defined obligations can be met.

Here, absent any evidence that CommonSpirit was at risk of defaulting on its contribution obligations, it was disloyal and imprudent for fiduciaries to choose to use the 401(k) Plan's assets for the financial benefit of CommonSpirit, rather than defraying the expenses of plan participants.

## B. Duty of Prudence

ERISA fiduciaries also owe a duty of prudence, which requires them "to manage plan assets under a prudent man standard of care, that is, solely in the interest of the participants and beneficiaries, and with the care, skill, prudence, and diligence that a prudent man acting in a like capacity and familiar with such matters would use under the circumstances." *Burke v. Boeing Co.,* 42 F.4th 716, 723 (7th Cir. 2022) (cleaned up); *see* 29 U.S.C. § 1104(a)(1)(B).

Defendants argue that Plaintiff's prudence claim must be dismissed because "[t]he Complaint lacks any allegations about what similarly-situated fiduciaries have done under the circumstances then prevailing." Mem. at 11 (quotations omitted). Defendants overstate their cited authority, as neither of the cited cases say anything about the pleading standard here. *See Spence v. Am. Airlines, Inc.*, 775 F. Supp. 3d 963, 998 (N.D. Tex. 2025) (finding, after a bench trial, that the plaintiff "failed to show by a preponderance of the evidence that Defendants breached the duty of prudence")*; DiFelice v. Fiduciary Couns., Inc.,* 398 F. Supp. 2d 453, 469 (E.D. Va. 2005) (finding the plaintiff's claim implausible given the facts alleged). "[A] district court errs . . . [by requiring] the plaintiff . . . to describe directly the ways in which [the defendants] breached their fiduciary duties[.] [I]t is sufficient for a plaintiff to plead facts indirectly showing unlawful behavior." *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016). Plaintiff has pled facts indirectly showing that Defendants failed to undertake any investigation before allocating forfeitures. Compl. ¶¶ 34-40, 74.

Defendants further argue that Plaintiff alleges only procedural imprudence and fails to allege objective imprudence: that a hypothetical prudent fiduciary would not have otherwise made the same decision. *Roth v. Sawyer-Cleator Lumber Co.*, 16 F.3d 915, 919 (8th Cir. 1994). But objective prudence is a shield from liability that Defendants have the burden of proving; it is not

an element of Plaintiff's claim. *See id.*; *accord Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 361 (4th Cir. 2014). Nevertheless, Plaintiff alleges objective imprudence. *See* Compl. ¶ 76.

Finally, Defendants argue that Plaintiff's allegations "boil down to alleging that the Company necessarily committed misconduct in its fiduciary capacity by not using forfeitures in [P]laintiff's preferred manner." Mem. at 12 (cleaned up). Defendants misconstrue Plaintiff's allegations. Plaintiff, in fact, alleges that the Company necessarily committed misconduct in its fiduciary capacity by not using forfeitures: (a) in the manner dictated by the terms of the Plan, and (b) solely in the interests of the participants and beneficiaries. Plaintiff's "preferred manner" for the use of forfeitures is nothing other than compliance with the law.

## III.     PLAINTIFF HAS PLEADED VIABLE PROHIBITED TRANSACTION CLAIMS.

### A.     29 U.S.C. § 1106(a)(1)(A) & (D)

ERISA bars fiduciaries from causing a plan to engage in a "transaction" in which property is "exchange[d]" between the plan and a "party in interest," or in which "assets of the plan" are "use[d] by or for the benefit of a party in interest." 29 U.S.C. § 1106(a)(1)(A) & (D)."[Section 1106(a)'s] bar is categorical: Any transaction that satisfies its three elements is presumptively unlawful." *Cunningham v. Cornell Univ.*, 604 U.S. 693, 700, (2025).

Defendants do not deny that their use of the Plan's forfeitures constituted a direct or indirect exchange of existing Plan property to CommonSpirit and caused Plan assets to be used for the benefit of CommonSpirit. Instead, Defendants argue that they did not violate Section 1106(a) because the forfeited amounts remain Plan assets. Mem. at 13 (citing *Hutchins*, 737 F. Supp. 3d at 868). Courts have properly rejected this interpretation of Section 1106(a) as too narrow. *See*

*Rodriguez,* 744 F. Supp. 3d at 949; *Becerra v. Bank of Am. Corp.,* No. 3:24-cv-921, Dkt. 56, at 8–9 (W.D.N.C. Aug. 12, 2025); *Perez-Cruet*, 2024 WL 2702207, at *7.[11]

Transactions prohibited under Section 1106(a)(1) generally "involve uses of plan assets that are potentially harmful to the plan." *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996). "[Plaintiff] has plausibly alleged that [Defendant's] reallocation of plan assets 'reduced the funds available to participants for distribution and/or investing,' a direct threat to the Plan itself." *Rodriguez.*, 744 F. Supp. 3d at 949. Thus, these alleged transaction "are consistent with the Supreme Court's interpretation of 'transaction" under [Section] 1106(a)(1)." *Id.*; *see also Becerra,* Dkt. 56, at 8–9 ("[T]he alleged transaction at issue is . . .the exchange of Plan assets to offset future employer contributions.").

Under Defendants' view, an intra-fund transfer is not a "transaction," and a fiduciary may use plan assets for its own exclusive benefit without committing a prohibited transaction so long as the use does not result in the assets leaving the plan. Such narrow definition of "transaction" cannot be found in Section 1106(a)(1), nor in the ordinary meaning of the word: "something transacted[,] especially[] an exchange ***or transfer*** of . . . funds."[12] Defendants cannot dispute that they transferred the Plan's forfeiture assets into employee accounts, so as to financially benefit CommonSpirit by reducing its matching contributions. As such, the Court should reject Defendants' unduly narrow interpretation of Section 1106(a)(1). *Leigh v. Engle*, 727 F.2d 113, 126 (7th Cir. 1984) ("The entire statutory scheme of ERISA demonstrates Congress'[s] overriding concern with the protection of plan beneficiaries, and [the court] would be reluctant to construe narrowly any protective provisions of the Act.").

---

[11] *Reconsideration denied*, 2024 WL 3798391 (S.D. Cal. Aug. 12, 2024).

[12] *Transaction*, *Merriam-Webster.com,* MERRIAM-WEBSTER,
 https://www.merriam-webster.com/dictionary/transaction (last accessed Oct. 3, 2025) (emphasis added).

### B. 29 U.S.C. § 1106(b)(1)

A fiduciary may not "deal with the assets of the plan in his own interest or for his own account." 29 U.S.C. § 1106(b)(1). Section 1106(b)(1)'s bar against self-dealing is "broader in scope" than that of Section 1106(a)(1). *Int'l Bhd. of Painters & Allied Trades Union and Indus. Pension Fund v. Duval*, 925 F. Supp. 815, 825 (D.D.C. 1996). Defendants again argue that they did not violate Section 1106(b)(1) because there was no "transaction." Mem. at 7–8. However, Section 1106(b)(1) "does not use the word 'transaction,'" and thus an "affirmative transaction" need not be shown. *United Food & Com. Workers Int'l Union-Indus. Pension Fund v. Bank of N.Y. Mellon*, 2014 WL 4627904, at *6 (N.D. Ill. Sept. 16, 2014); *see also McMaken on behalf of Chemonics Int'l, Inc. Emp. Stock Ownership Plan v. GreatBanc Tr. Co.*, 2019 WL 1468157, at *7 (N.D. Ill. Apr. 3, 2019) (Wood, J.) ("[A] broad interpretation of the 'deal with' language in [29 U.S.C.§ 1106(b)(1)] comports with Congress's intent."). Here, "Defendant [CommonSpirit] plausibly did deal with the assets of the plan." *Perez-Cruet*, 2024 WL 2702207, at *6.

## IV. DEFENDANTS PLAUSIBLY VIOLATED ERISA'S ANTI-INUREMENT PROVISION.

"[T]he assets of a pension plan shall never inure to the benefit of any employer . . . ." 29 U.S.C. § 1103(c)(1). CommonSpirit's conduct violated this rule. Defendants caused the Plan's forfeiture assets to inure to the benefit of CommonSpirit by using them to reduce the company's matching contributions, rather than using them to defray expenses of administering the plan.

Defendants relying on *Hutchins*, argue that Plaintiff's anti-inurement claim fails "because he merely alleges a reallocation of forfeitures within the Plan." Mem. at 9 (citing *Hutchins*, 737 F. Supp. 3d at 868). *Hutchins* concluded that the benefit the defendant fiduciary received from its use of forfeitures as a substitute for its matching contribution obligations was only "incidental" and thus no violation of ERISA's anti-inurement provision occurred. 737 F. Supp. 3d at 866 (citing

*Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 442 (1999)). But Plaintiff alleges that CommonSpirit "received a benefit amounting to **millions of dollars in contribution expenses** by electing to use the plan assets as a substitute for the Company's own future contributions to the plan." *Rodriguez*, 744 F. Supp. 3d at 946 (upholding anti-inurement claim arising from alleged misuse of forfeitures) (internal quotation marks omitted). This "is equivalent to 'debt forgiveness' and is thus a '**direct and greater-than-incidental benefit**.'" *Id*. (emphasis added). Indeed, this direct monetary benefit is clearly distinct from the incidental intangible benefits recognized in *Hughes*. *See Hughes*, 525 U.S. at 445 (Incidental benefits include "attracting and retaining employees, paying deferred compensation, settling or avoiding strikes, providing increased compensation without increasing wages, increasing employee turnover, and reducing the likelihood of lawsuits."). What's more, CommonSpirit received these benefits only because Defendants violated the explicit terms of the Plan. A benefit that is realized only by violating the Plan's terms cannot plausibly be considered incidental to payment of pension benefits. Again, Defendants' narrow interpretation of Section 1103(c)(1) is inconsistent with the Seventh Circuit's "[reluctance] to construe narrowly any protective provisions of the Act." *Leigh*, 727 F.2d at 126.

## V. PLAINTIFF PLAUSIBLY ALLEGES A FAILURE TO MONITOR CLAIM AGAINST DEFENDANT COMMONSPIRIT.

"A failure to monitor claim is derivative in nature and must be premised on an underlying breach of fiduciary duty." *Dale v. NFP Corp.*, 658 F. Supp. 3d 620, 636–37 (N.D. Ill. 2023) (cleaned up)). Because Plaintiff has sufficiently alleged an underlying fiduciary breach, Plaintiff has adequately alleged a claim for failure to monitor against Defendant CommonSpirit.

## CONCLUSION

For these reasons, the Court should deny Defendants' Motion to Dismiss in its entirety.

Dated: October 9, 2025

Respectfully,

/s/ *Daniel R. Ferri*

Adam J. Levitt, IL Bar No. 6216433
Daniel R. Ferri, IL Bar No. 6303286
Elijah G. Savage, IL Bar No. 6350126
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: 312-214-7900
alevitt@dicellolevitt.com
dferri@dicellolevitt.com
esavage@dicellolevitt.com

*Counsel for Plaintiff and the*
*Proposed Class*